IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| FleetPride, Inc., | Case No. 3:13-cv-91 |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT** |
| Inland Truck Parts Company; David W. Scheer; Duane R. Parke; and Travis L. Wellen, | |
| Defendants. | |

**1.   JURISDICTION**

Before the court are a motion for leave to file a third amended complaint and competing cross-motions for summary judgment.[1] FleetPride, Inc. ("FleetPride") is an Alabama corporation with its principal place of business in Texas.[2] Defendant Inland Truck Parts Company ("Inland') is a Minnesota corporation with its principal place of business in Kansas.[3] Defendant David Scheer ("Scheer") is the President and CEO of Inland Truck Parts Company and a resident of Kansas.[4] Defendant Duane Parke ("Parke") is the General Manager of Inland's Fargo branch and a resident of North Dakota.[5] Defendant Travis Wellen ("Wellen") is a North Dakota resident and Assistant

---

[1] Doc. #56, Motion for Leave to File a Third Amended Complaint; Doc. # 77, Motion for Summary Judgment; Doc. #82 , Motion for Partial Summary Judgment.

[2] Doc. #47. Second Amended Compl., ¶ 13.

[3] Doc. #52, Answer to Second Amended Compl., ¶ 14.

[4] Id. at ¶ 15.

[5] Id. at ¶ 16.

Manager of Inland's Fargo branch.[6] The amount in controversy exceeds $75,000.[7] The court has subject matter jurisdiction under 28 U.S.C. § 1332.

**2.    Introduction**

FleetPride and Inland are competitors in the truck part, supplies, accessories and repair business. This appears to be the one reality that all parties agree upon.

The essence of FleetPride's claims is that FleetPride has a branch in Fargo, North Dakota and Inland and Scheer, aided and abetted by Parke and Wellen, developed and implemented a carefully constructed scheme to steal away FleetPride's highly skilled employee workforce; seduced those employees into taking along highly valuable client information and trade secrets; and attempted to lure their long-standing clients all to the detriment of FleetPride.[8]

Inland and the associated defendants assert that this characterization is wildly inaccurate and that the essence of the case is that two employees (Parke and Wellen), desperate to escape a wildly dysfunctional work environment, successfully sought to secure new employment with an employer more to their liking (Inland). In short, Parke and Wellen took their experience to a competitor and took all reasonable steps to assure that neither they, nor any of their subsequent hires engaged in any conduct designed to either interfere with FleetPride's business, purloin trade secrets, or inveigle FleetPride's clients to come to Inland.[9]

---

[6] Id. at ¶ 17.

[7] Id. at ¶ 19.

[8] Doc. # 47, Second Amended Complaint.

[9] Doc. #78, Defendant's Memorandum in Support of Motion for Summary Judgment.

If you take from the above-paragraphs that the facts are highly disputed, your interpretation is accurate. The parties' versions as to what happened and the interpretation of even the undisputed facts are like two persons passing on a bridge in the middle of the night speaking different languages. I wander into this morass not because it is desirable, but because duty demands it.

The parties are well aware of their own versions of the facts, and strenuously object to the opponents' construction of the facts. Little is to be gained by attempting to recite the undisputed facts because the inferences and nuances to be drawn from even the most banal uncontested fact are fiercely controverted in the parties' pleadings and filings. Each side seeks affirmation of their version of "what the facts mean." I decline to enter into this swamp and will limit my factual recitation to those necessary to actually resolve the few issues that can be resolved by these motions.

**3.    FleetPride Has Not Established a Sufficient Claim to Plead for Punitive or Exemplary Damages**

FleetPride seeks to amend its complaint to seek punitive or exemplary damages as authorized by North Dakota law.[10] Such an amendment is only allowable if the moving party produces sufficient evidence "to support a finding by the trier of fact that a preponderance of the evidence establishes oppression, fraud or actual malice" on the part of the defendant.[11]

Actual malice is present when an act is performed with "an intent with ill will or

---

[10] N.D. Cent. Code § 32-03.2-11(1).

[11] Id.; McHugh v. Jacobs, 450 F. Supp. 2d 1019, 1023 (D.N.D. 2006).

3

wrongful motive to harass, annoy or injure another person."[12] Actual malice may be inferred from the character of the act itself while taking into consideration all of the surrounding facts and circumstances.[13] While actual malice is usually a matter for the jury,[14] it is permissible to presume actual malice when the alleged bad actor evinces a state of mind that is "reckless of law and of the legal rights of the citizen in the person's conduct toward that citizen."[15]

FleetPride identifies a number of steps Inland allegedly took to harass, annoy, or injure FleetPride:

1)  Scheer testified that Inland would not have opened in Fargo at the time if Parke and Wellen had not signed on.[16]

2)  Scheer was interested specifically in recruiting Parke and Wellen, in part, because they had relationships with FleetPride's employees and customers, and they might be able to get some of those employees and customers to come to Inland.[17]

3)  Inland used a shell company to buy its Fargo building, and emailed the contractors about the importance of keeping its plans secret.[18]

4)  Inland hired an independent contractor to design its Fargo store, which deviated from its normal practice of hiring the new store manager to design a store.[19]

---

[12] McHugh, 450 F. Supp. 2d at 1023.

[13] Dahlen v. Landis, 314 N.W.2d 63, 69 (N.D. 1981).

[14] Neidhart v. Siverts, 103 N.W.2d 97, 102 (N.D. 1960).

[15] Stoner v. Nash Finch, Inc., 446 N.W.2d 747, 754 (N.D. 1989).

[16] Doc. #73, Scheer Dep. pp. 98,191.

[17] Id.

[18] Doc. #56-13, Klein Email to Dandurand (Jan. 19, 2013).

[19] Doc. #73, Scheer Dep., p. 41.

5)  Inland directed Parke and Wellen to keep working for FleetPride, then resign without giving the customary two-weeks' notice so FleetPride would not know they had joined Inland, and Inland would be able to immediately recruit employees.[20]

6)  Inland directed Parke and Wellen not to call during work hours, and Parke purchased a new phone so he would not have to use his FleetPride phone – his only phone at the time – to contact Scheer.[21]

7)  Inland held a mass meeting to hire FleetPride's best employees immediately after Parke and Wellen resigned.[22]

8)  Inland generally placed employees in jobs that held the same responsibilities as their FleetPride positions.[23]

FleetPride asserts that these tactics gave Inland two major advantages and evidence actual malice. First, these tactics allowed Inland to acquire employees from the area who already had connections with local customers and who could immediately contribute to Inland's customer service centered approach.[24] Second, Inland took these steps to gain both a foothold in Fargo and a huge competitive advantage by "crippling" FleetPride.[25]

These acts taken either individually or in aggregate fail to establish an intent with ill will or wrongful motive to harass, annoy, or injure FleetPride on the part of Inland. Some of them may be actionable under other applicable law, but they simply evidence

---

[20] Doc. #73-2, Parke Dep., pp. 260–61.

[21] Id. at pp. 232–33.

[22] Doc. #73-1, Klein Dep., pp. 130–31.

[23] E.g., Doc. #73, Scheer Dep., pp. 231–33 (explaining that salesmen were placed in territories that were the same as possible as their territories at FleetPride).

[24] See Doc. #116, FleetPride Brief in Support of Mot. for Leave to File a Third Amended Compl., p. 14.

[25] Id. at p. 13.

an intent to fiercely compete for a finite book of business–the truck parts, supplies and repair business. Merely attempting to obtain a competitive advantage against a competitor is not actual malice–and while some of the alleged conduct may give rise to a claim for damages, it falls well short of the types of claims that have gone forward on an exemplary damages claim under North Dakota law.

The Motion for Leave to File a Third Amended Complaint is in all things **DENIED**.

4. **FleetPride's Employee Contact List is Not a Trade Secret**

FleetPride has asserted that its employee contact list is a trade secret that was misappropriated by Parke when he copied the information into his personal cell phone and subsequently used it to invite FleetPride's employees to a meeting with Inland.[26] Parke claims that he compiled the names on his work cell phone before FleetPride acquired CATCO.[27]

While FleetPride asserts that this information is a trade secret and not readily available, such an analysis is not well-founded. The identities of these employees were undoubtedly either already known in the relatively small truck part and repair business in Fargo, North Dakota or readily determinable. With that information in hand, anyone in the business could have reached out to them.[28] More importantly, FleetPride has

---

[26] Doc. #90-3 at p. 8.

[27] Doc. # 73-2, Parke Dep., p. 292.

[28] See Warner and Co. v. Solberg, 634 N.W.2d 65, 76 (N.D. 2001) (" Perhaps the most important consideration is whether the information is readily accessible to a reasonably diligent competitor or salesman.").

produced no evidence that Inland actually derived anything of value by having the employee list in hand. While FleetPride points out that the task of reaching out to 26 of FleetPride's employees was made simpler, they overestimate the difficulty that Inland would had faced in identifying and reaching out to 26 people in a single line of work. Even if Parke did not have the information from his cell phone, it would not have delayed the solicitations by very long. In a community the size present here, identifying and soliciting would have been a simple matter.[29]

Under these circumstances, the claim that the employee contact list is a trade secret is untenable. Inland's motion for summary judgment on this claim is **GRANTED**.

**5.     Validity of the Nonsolicitation Agreement**

Inland asserts that Wellen's Nonsolicitation Agreement is void as an unlawful restraint of trade under North Dakota law and that it must fail for a want of consideration.[30] The restraint of trade argument would appear to be barred by the North Dakota Supreme Court's opinion in Warner and Co. v. Solberg.[31] Inland claims that the case at bar is distinguishable because it is more broadly drawn than the agreement in Warner. Specifically, it claims that because Warner was limited to soliciting a certain class of employees (insurance agents) and the instant clause

---

[29] See CDI Energy Serv's v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) ("It appears undisputed that the potential customers for CDI and West River in the area surrounding Dickinson are a small collection of easily identifiable, locally operating oilfield companies.").

[30] Doc. #78 at p. 37.

[31] 634 N.W.2d 65, 73 (N.D. 2001).

prohibits solicitation of any employee, the current agreement is overbroad and constitutes a restraint of trade.

In fact, the agreement is not significantly broader than the agreement in Warner. It allows Wellen to continue to work in the same industry, in the same community, and solicit his former customers–it simply prohibits solicitation of FleetPride's employees for one year. This agreement is significantly narrower than nonsolicitation agreements that have been approved under North Dakota law.[32]

Consideration consists of any benefit to the promisor or detriment to the promisee.[33] A written instrument is evidence that gives rise to a presumption of consideration,[34] which shifts the burden to Inland when it seeks to show a lack of consideration.[35] Inland is not able to overcome the presumption because Wellen continued in employment after the acquisition of CATCO–which is good and valuable consideration as a matter of law. Nonetheless, this claim is not an appropriate one for summary judgment because the issue of damages, where not readily ascertainable, is a question left to the ultimate finder of fact.[36]

---

[32] E.g., Kovarik v. American Family Ins. Group, 108 F.3d 962,967 (8th Cir. 1997) (applying North Dakota law and upholding nonsolicitation agreement that prohibited insurance agent from soliciting former customers for one year).

[33] N.D. Cent. Code §9-05-01; Aho v. Maragos, 605 N.W.2d 161, 163-64 (N.D. 2000).

[34] N.D. Cent. Code § 9-05-10.

[35] N.D. Cent. Code § 9-05-11.

[36] Martin v. Trinity Hospital, 755 N.W.2d 900,909 (N.D. 2008).

**6. Other Claims**

All of the other claims that the parties assert give rise to summary judgment raise genuine issues of material fact and give rise to substantial questions of fact for the ultimate finder of fact. These claims are, therefore, not amenable to disposition on summary judgment.

**IT IS HEREBY ORDERED:**

(1) FleetPride's Motion for Leave to File a Third Amended Complaint is **DENIED**.

(2) Inland's Motion for Summary Judgment on the issue that the Employee Contact List is not a trade secret is **GRANTED.**

(3) FleetPride's Motion for Summary Judgment on the issue of the Nonsolicitation Agreement is **DENIED** on the ground that damages remain a question for the ultimate finder of fact.

(4) All other Motions for Summary Judgment raise genuine issues of material fact and are **DENIED.**

Dated this 18th day of February, 2015.

           ___/s/  Ralph R. Erickson___
           Ralph R. Erickson, Chief District Judge
           United States District Court